**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 11-cv-02747-MSK

**TENIECKA N. DRAKE,**

    Plaintiff,

v.

**MICHAEL J. ASTRUE, as acting Commissioner of the Social Security Administration,**

    Defendant.

## OPINION, ORDER AND JUDGMENT

**THIS MATTER** comes before the Court on Plaintiff Teniecka N. Drake's appeal from the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83c. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

**I.    Jurisdiction**

Ms. Drake filed claims for disability insurance benefits pursuant to Title II and supplemental security income pursuant to Title XVI. She asserted that her disability began January 10, 2008. After her claims were initially denied, Ms. Drake filed a written request for a hearing before an Administrative Law Judge ("ALJ"). This request was granted and a hearing was held.

In her decision, the ALJ found that Ms. Drake met the insured status requirements of the Social Security Act through December 31, 2008 and that Ms. Drake had not engaged in substantial gainful activity since the asserted onset date of her disability. The ALJ also found that Ms. Drake had the following severe impairments: Human Immunodeficiency Virus / Acquired Immunodeficiency Syndrome ("HIV/AIDS"), bipolar disorder, anxiety disorder, and obesity. The ALJ found that none of these impairments, whether considered individually or in combination, met or were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"). The ALJ found that Ms. Drake had the Residual Functional Capacity ("RFC") to perform light work, with moderate limitations in maintaining concentration, persistence, and pace. Finally, the ALJ found that Ms. Drake was able to perform two of her past jobs, cosmetics clerk and sales attendant, and was therefore not disabled.

Ms. Drake's request for review of the ALJ's decision was denied by the Appeals Council. Consequently, the ALJ's decision is the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Ms. Drake's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 28 U.S.C. § 405(g).

**II.     Material Facts**

Having reviewed the record in light of the issues raised, the material facts are as follows. Ms. Drake was diagnosed with HIV/AIDS in 2001 and subsequently received treatment for HIV/AIDS from several doctors who prescribed a myriad of medications with recognized side effects. Dr. Hofflin treated Ms. Drake from 2001 to 2008. In his medical notes, he recorded that Ms. Drake reported nausea or vomiting in 2006, 2007, and 2008. From 2009 to 2010, Ms. Drake

was treated by several doctors working for the Veterans Administration Healthcare System, including Drs. Kroll, Sanchez, Bessesen, and Kartalija. In 2009 she reported nausea, vomiting, diarrhea, fatigue, and insomnia to Dr. Kroll, nausea, vomiting and diarrhea to Dr. Sanchez, and vomiting to Dr. Bessesen. In 2010, Ms. Drake told Dr. Kartalija that she had nausea.

At the hearing, Ms. Drake testified that she had persistent and intermittent nausea, vomiting and diarrhea which she attributed to her HIV/AIDS medications. She also stated that she had periodic headaches, muscle aches, fatigue, dizziness, and insomnia, which she attributed to either HIV/AIDS or her HIV/AIDS medication.

### III.     Issues Presented

Ms. Drake raises four challenges to the Commissioner's decision: (1) the ALJ erred in failing to properly evaluate Ms. Drake's subjective complaints because she failed to apply all of the regulatory factors as required in Social Security Regulation ("SSR") 96-7p; (2) the ALJ erred in finding that Ms. Drake was not a credible witness; (3) the ALJ erred in rejecting the treating physician's opinions; and (4) the ALJ erred in finding that Ms. Drake was noncompliant with her prescribed treatment. Ms. Drake's arguments do not challenge the ALJ's findings at Step 1, 2, or 3 in the established five-step disability evaluation sequence, but instead focus on the ALJ's analysis at Step 4. The Court finds no need to address Ms. Drake's challenges *seriatim* because the first three issues concern the ALJ's determination at Step 4 focusing upon a core issue – did the ALJ adequately consider the side-effects of Ms. Drake's medication in evaluating the treating physician's opinion and Ms. Drake's subjective symptoms.

### IV.     Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the

Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 F.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

A **treating physician's opinion** is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1517(c)(2). An ALJ must give specific and legitimate reasons to reject a treating physician's opinion or give it less than controlling weight. *Drapeau v. Massanari*, 255 F.3d 1211 (10th Cir. 2001). Even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and must be weighed using the following factors:

> 1) the length of the treatment relationship and the frequency of examination;
> 2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether or not the physician is a specialist in the area upon which an opinion is rendered; 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01 (citation omitted); 20 C.F.R. § 404.1527. Having considered these factors, an ALJ must give good reasons in for the weight assigned to a treating source's opinion. 20 C.F.R. § 404.1517(c)(2). Finally, these reasons must be sufficiently specific to make clear to

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight. *Watkins*, 350 F.3d at 1301.

When considering whether a claimant is disabled, the ALJ must take into consideration of all of a claimant's symptoms, including **subjective symptoms**. 20 C.F.R. § 404.1529(a). Subjective symptoms are those that cannot be objectively measured or documented. One example is pain, but there are many other symptoms which may be experienced by a claimant that no medical test can corroborate. By their nature, subjective symptoms are most often identified and described in the testimony or statements of the claimant or other witnesses.

In assessing subjective symptoms, the ALJ must consider statements of the claimant relative to objective medical evidence and other evidence in the record. 20 C.F.R. §404.1529(c)(4). If a claimant has a medically determinable impairment that could reasonably be expected to produce the identified symptoms, then the ALJ must evaluate the intensity, severity, frequency, and limiting effect of the symptoms on the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1); SSR 96-7p.

In the 10th Circuit, this analysis has three steps: 1) the ALJ must determine whether there is a symptom-producing impairment established by objective medical evidence; 2) if so, the ALJ must determine whether there is a "loose nexus" between the proven impairment and the claimant's subjective symptoms; and 3) if so, the ALJ must determine whether considering all the evidence, both objective and subjective, claimant's symptoms are in fact disabling. *Luna v. Bown*, 834 F.2d 161, 163-64 (10th Cir. 1987).[1] The third step of the *Luna* analysis involves a holistic review of the record. ALJ must consider pertinent evidence including a claimant's

---

[1] The ALJ need not follow a rote process of evaluation, but must specify the evidence considered and the weight given to it. **Error! Main Document Only.***Qualls v. Apfel*, 206 F3d 1368, 1372 ( 10th Cir 2000).

history, medical signs and laboratory findings, as well as statements from the claimant, medical or nonmedical sources, or other persons. 20 C.F.R. § 404.1529(c)(1). In addition, 20 C.F.R. § 404.1529(c)(3) instructs the ALJ to consider:

> 1) [t]he individual's daily activities; 2) [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) [f]actors that precipitate and aggravate the symptoms; 4) [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms…; and 7) [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Inherent in the review is whether to what degree there are conflicts between the claimant's statements and the rest of the evidence. *Id.* Ultimately, the ALJ must make specific evidentiary findings[2] with regard to the existence, severity, frequency and effect of the subjective symptoms on the claimant's ability to work. 20 C.F.R. § 404.1529(c)(4). This requires specific evidentiary findings supported by substantial evidence. *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988); *Diaz*, 898 F.2d at 777.

### V. Discussion

There is no disagreement that Ms. Drake suffered a severe impairment of HIV/AIDS, and that she was treated with a variety of medications that had serious side effects. The medication

---

[2] Often these findings are described as "credibility determinations". Technically, the credibility assessment is as to particular testimony or statements. But this characterization often improperly leads ALJs and claimants to focus upon whether the claimant is believable or "telling the truth". Such focus is reflected in ALJ references to the "claimant's credibility" and claimants' umbrage on appeal at findings that suggest that they were untruthful.

Greater precision in distinguishing between the credibility of particular testimony as compared to general credibility of a claimant is helpful for subsequent review. It is also worth recognizing determining the ontological truth or falsity of a claimant's statements is rarely necessary. Indeed, the searching inquiry required of the ALJ assumes that the claimant experiences a symptom that cannot be objectively documented – pain, confusion, ringing in the ears, tingling, nausea and the like. The focus of the inquiry need not be to determine whether the claimant is truthfully reporting his or her experience, but instead to determine whether such symptom corresponds to a severe impairment and whether its nature, intensity, frequency, and severity affects the claimant's ability to work. Careful analysis results in factual findings supported by substantial evidence. *See e.g. Diaz v. Sec. of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)

side effects were reported as subjective symptoms – nausea, vomiting and diarrhea which Ms. Drake said occurred persistently and frequently.

As to assessment of the effects of HIV/AIDS, the Court finds that the ALJ used both the proper analytical process and her factual findings were supported by substantial evidence. However, the ALJ did not adequately evaluate the side effects of the medications taken by Ms. Drake. This oversight appears in her assessment of the opinion of Ms. Drake's treating physician, Dr. Kartalija, and in assessment of Ms. Drake's subjective symptoms.

### A. Assessment of Dr. Kartalija's Opinion

Dr. Kartalija completed an HIV Medical Assessment Form in which she noted that Ms. Drake exhibited several side effects from HIV/AIDS medication that would limit her ability to work. These included drowsiness or sedation, malaise, fatigue, dizziness, and insomnia. In this same assessment, Dr. Kartalija determined that Ms. Drake had marked difficulties in timely completing tasks due to limits in concentration, persistence, or pace; she would be unable to handle sources of workplace stress, including public contact, complicated tasks, strict deadlines, close interaction with coworkers or supervisors, and exposure to work hazards; she was limited to less than two hours of sitting, standing, or walking per day; and she required six breaks of twenty minutes each during an average workday.

The ALJ gave Dr. Kartalija's opinion little weight because Dr. Kartalija's opinion was "at odds with the medical record," which "reflects intact daily activities, excellent control of HIV/AIDS without medication side effects, and stable mental symptoms….".

The ALJ's finding with regard to side effects of medication is unsupported by further explanation or by substantial evidence. Ms. Drake testified about persistent and severe side effects of her medication - nausea, vomiting, diarrhea, headaches, fatigue, and dizziness. These

symptoms are also reported in the opinions and records of Drs. Hofflin, Kroll, Sanchez, Bessesen, and Kartalija. Dr. Kartalija's opinion is premised, in part, on medication side effects. Rejection of the opinion based on an inaccurate and unexplained finding that there were no side effects constitutes error requiring a remand.

### B. Assessment of Ms. Drake's Subjective Symptoms

The ALJ also found that Ms. Drake's subjective symptoms - vomiting, diarrhea, nausea, and fatigue - were not "fully persuasive" considering "objective medical evidence, [Ms. Drake's] treatment noncompliance, her relative stability with treatment when she does comply, her daily activities, her inconsistent report regarding her reasons for leaving her past work, and the opinions given at least some weight above…."

Ms. Drake justifiably objects to the adequacy of these findings. The findings are general, rather than specific, do not appear to be derived by application of the *Luna* analytical process and do not reflect consideration of contrary evidence in the record. To the extent that the ALJ found any support for the subjective symptoms, she was required to assess their effect on Ms. Drake's ability to work.

Giving the ALJ the benefit of the doubt, it appears that she only considered the "objective medical evidence," relative to HIV/AIDS, rather than considering evidence pertinent to medication side effects. Indeed, there is no evaluation of any correlation between known side effects of Ms. Drake's medications and these symptoms or to Ms. Drake's reports to her doctors about these symptoms. For example, according to Dr. Hofflin's notes, Ms. Drake reported consistent vomiting on October 16, 2008, nausea on January 22, 2008, vomiting on December 19, 2007, nausea on December 4, 2006, and nausea, vomiting, and malaise in August of 2006. Dr. Kroll's notes indicate that Ms. Drake reported nausea and vomiting on May 5, 2009, as well

as fatigue and insomnia on January 27, 2009. Dr. Sanchez's evaluation from December 15, 2009, reflects that Ms. Drake had symptoms of nausea, vomiting, and diarrhea. Dr. Kartalija's notes indicate that Ms. Drake reported nausea on June 15, 2010.

In briefing, the Commissioner correctly observes that some of the reports of nausea and vomiting temporally correspond to early stages in Ms. Drake's pregnancies. However, the ALJ makes no observation about such circumstances. Without a complete analysis and explication by the ALJ as to nature, severity, frequency and effect of nausea, vomiting, diarrhea and other subjective symptoms, to what degree they are attributable to medication side effects and how they affect Ms. Drake's ability to work, the required *Luna* analysis is not complete and rejection of Ms. Drake's subjective symptoms as a limitation on her ability to work is not supported by substantial evidence.

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED**, and the case is **REMANDED** for consideration of the side effects of Ms. Drake's medications and subjective symptoms at Step 4 and further analysis at Step 5, if warranted.

DATED this 19th day of March, 2013

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge